**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **REVELYN ALPAUGH,**  o.b.o. **LANCE D. ALPAUGH,** ) ) ) | |
| **Plaintiff,** ) ) ) | **CIVIL ACTION** |
| v. ) ) | No. 16-2328-JWL |
| **NANCY A. BERRYHILL,**[1] ) **Acting Commissioner of Social Security,** ) ) | |
| **Defendant.** ) ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits to her son, Mr. Lance Alpaugh, who passed away after the decision, made pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Herein, the court refers to the plaintiff as Ms. Alpaugh or Plaintiff, and to her son as Mr. Alpaugh or the decedent. Finding error in the Administrative Law Judge's (ALJ) evaluation of the decedent's obesity, the court ORDERS that the decision

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent herewith.

## I. Background

Mr. Alpaugh applied for DIB and SSI benefits, alleging disability beginning January 15, 2011. (R. 17, 151, 154, 161). Mr. Alpaugh and the plaintiff exhausted proceedings before the Commissioner, and now Plaintiff seeks judicial review of the final decision denying benefits. Plaintiff argues that the ALJ failed to properly consider conflicts between the vocational expert (VE) testimony and the information provided in the Dictionary of Occupational Titles (DOT), erred in considering the opinions of a state agency psychological consultant, Dr. Adams, and two consultant examiners, Dr. Rupp and Dr. VanLeeuwen, and insufficiently explained her conclusions regarding the limitations resulting from the decedent's obesity.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S.

389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether, in light of the RFC assessed, claimant can perform his past relevant work, and whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erred in evaluating Mr. Alpaugh's obesity as required by Social Security Ruling 02-1p. Because remand is necessary to apply the correct legal standard, the court need not decide Plaintiff's allegations of error in evaluating the medical opinions or failure to consider inconsistency between the VE testimony and the DOT. Plaintiff should make those arguments to the Commissioner on remand.

## II. Discussion

In her Brief, Plaintiff argues that an ALJ is required to assess the ability of an obese claimant to move and function within a work environment and is required to explain how she reached her conclusion whether obesity caused mental or physical limitations. (Pl. Br. 14) (citing SSR 02-1p, question no. 8). She acknowledges that the ALJ stated that she had considered the effects of obesity on the decedent's RFC, but argues that this is insufficient. Id. at 14-15 and n.3 (containing numerous citations to district court opinions, several of which do not identify the district court whose opinion is cited). The Commissioner argues that the ALJ "specifically referenced" Mr. Alpaugh's weight and no medical professional opined that he was more limited than did the ALJ, and that lacking evidence of additional limitations the ALJ's consideration is "legally sound." (Comm'r Br. 5) (citing Howard v. Barnhart, 379 F.3d 945, 948 (10th Cir. 2004)). In her Reply Brief, Plaintiff argues that Dr. Rupp opined regarding limitations attributable to the decedent's obesity and the ALJ did not include them or any other limitation related to obesity in the RFC assessed. (Reply 8-9). She also argues that Mr. Alpaugh's obesity resulted in his death. Id. at 9.

### A    The ALJ's Findings

Based on SSR 02-1p, the record evidence, and Mr. Alpaugh's testimony that he is 76 inches tall[2] and weighs 400 pounds or more, the ALJ found that he was obese and

---

[2]Mr. Alpaugh testified that he is six feet, six inches tall, which would equal 78" tall. (R. 44). Neither party contests the ALJ's finding regarding Mr. Alpaugh's height,

5

stated that she "considered the effects of obesity on claimant's functional capacity." (R. 23). The ALJ found that the decedent had a combination of impairments that was severe within the meaning of the Act, including past reconstructive surgery after a left ankle fracture and degenerative joint disease of the right foot, that he had type II diabetes and hypertension which are non-severe, and that his condition does not meet or equal Listing 1.02 for major dysfunction of a joint or joints. Id. at 19-20.

The decedent's obesity would affect the function of his ankles and feet, and the ALJ discussed record evidence related to those impairments:

> In terms of claimant's alleged impairments of the ankles, claimant alleged he has bilateral foot and ankle pain (Exhibits 1F/8; 6F/8, 22; 7F/1 [(R. 326, 378, 392, 396)]). The record shows that he injured his left ankle during a motorcycle accident, many years ago (Exhibit1F/2 [(R. 320)]). For this injury, he underwent reconstructive surgery (Exhibits lF/2; 8F/17 [(R. 320, 423)]). In addition to pain, claimant alleged he has swelling below in the knee [sic] of both legs (Exhibits lF/8, 27 [(R. 326, 345)]). Objectively, x-rays of the right foot on January 16, 2014, showed fragmented navicular and severe degenerative changes of the mid foot right side and (Exhibits 6F/8; 7F/3 [(R. 378, 398)]) and limited range of motion on the right (Exhibit 7F/3 [(R. 398)]). There are no records of recent x-rays of the left foot or ankle. He has been diagnosed with severe right foot degenerative joint disease (Exhibit 7F/4 [(R. 399)]), and he has been prescribed Ultram for his pain symptoms (Exhibit lF/2 [(R. 320)]).
>
> On examination, claimant demonstrated significant difficulty performing orthopedic maneuvers, and difficulty heel and toe walking (Exhibit 7F/3 [(R. 398)]). He demonstrated moderate difficulty squatting and arising from a seated position (Exhibit 7F/3 [(R. 398)]). Claimant complains of difficulty walking to his car (Exhibit 8F/12 [(R. 418)]), and he indicated

---

and it does not materially affect this court's decision. If Mr. Alpaugh was over 400 pounds and 78" tall, he would appear marginally less obese than if he were 76" tall and the same weight. On remand the Commissioner may verify or correct this information.

that his pain symptoms are exacerbated by exposure to weather changes (Exhibit 7F/1 [(R. 396)]). Claimant testified that he needs to elevate his foot throughout the day, at the level of his heart. He stated that due to this need, he spends most of his day in a recliner. He reports that he is able to sit for an unlimited amount of time, stand for 20 minutes at one time, and walk for 30 minutes at one time (Exhibit 7F/1 [(R. 396)]).

Despite claimant's allegations of chronic pain, he has not used pain medication on a regular basis, and he does not currently use prescription pain medication (Exhibit 7F/1 [(R. 396)]). He alleged that he must elevate his foot throughout the day due to edema. However, venous Doppler examinations of claimant were normal, and he has only trace edema on examination (Exhibits lF/16; 7F/2 [(R. 334, 397)]). Claimant alleged he has difficulty standing and walking, but his gait and station are stable, with a limp favoring the right (Exhibits lF/29; 8F/9; 7F/2 [(R. 347, 397, 415)]). He has normal joint stability and he does not use an assistive device to ambulate (Exhibits 6F/18; 7F/1 [(R. 388, 396)]). Claimant retains the ability to drive, and he demonstrated only mild difficulty getting on and off the examination table during the consultative examination (Exhibit 7F/3 [(R. 398)]). Finally, claimant has not been given restrictions on performing activity by his doctor. In fact, he has been advised to exercise (Exhibit lF/16 [(R. 334)]). Based on this information, the undersigned finds these impairments are not as severe as alleged.

(R. 23-24).

### B. Analysis

There is evidence in the record that Mr. Alpaugh's weight was as high as 430 pounds (R. 396), and at the hearing he reported that he weighs "400 plus pounds." (R. 44). SSR 02-1p recognizes that obesity "increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus . . . hypertension, . . . [and] osteoarthritis," and "may also cause or contribute to mental impairments such as depression." Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281, at *3 (Sept. 12, 2002). And the ALJ found each of these impairments was at least a medically

7

determinable impairment present in this case. (R. 19-20). SSR 02-1p states that the Social Security Administration (SSA or agency) will consider obesity in determining whether a claimant has a medically determinable impairment, and whether the claimant's impairments are severe. Yet the ALJ did not discuss obesity or find it to be a medically determinable (or severe) impairment in her step two analysis. Id. And, as Plaintiff points out, SSR 02-1p requires that the agency, "will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p, 2002 WL 34686281, at *7. While the court will not require a specific explanation in cases where the ALJ's rationale is discernible from the decision, this is not such a case.

Here, the ALJ recognized severe impairments in both ankles, a fragmented navicular and severe degenerative changes in the mid right foot with limited range of motion, and noted the decedent's complaints of pain and edema (R. 23), but she said nothing about obesity and how it impacted these findings or complaints and did not point to record evidence supporting her findings (or lack of finding). She recognized Dr. Rupp's findings (or opinions?) regarding Mr. Alpaugh's ability to perform orthopedic maneuvers, id. but did not relate them to his obesity or explain how she had considered them together. In fact, she noted Dr. Rupp's report of mild difficulty getting on and off the examining table and moderate difficulty squatting and arising from a seated position, but she did not acknowledge his report that Mr. Alpaugh did not hop, and while Dr. Rupp reported he had "severe difficulty with heel and toe walking" (R.398), the ALJ reported only "difficulty heel and toe walking." (R. 23). While the court is aware that semantics

and characterization are within the purview of the ALJ, in a case such as this, where the claimant is so obviously obese, and has so many impairments and alleged symptoms which could be caused or affected by his obesity, all of this evidence suggests that the ALJ did not adequately explain her conclusions regarding the effects of obesity.

The ALJ acknowledged Mr. Alpaugh's allegations of edema and difficulty standing and walking and notes that venous Doppler examinations were normal, trace edema was found on examination, and "gait and station are stable, with a limp favoring the right," and he has "normal joint stability." (R. 23-24). Here again, these statements do not contain the full story, and do not explain how the decedent's obesity affected the other impairments and findings. The January 16, 2014 treatment record to which the ALJ cites reveals that joint stability checking found "no laxity or deformities," and that as to the <u>right</u> lower extremity "normal stability." (R. 388). The record reveals that pain limited Mr. Alpaugh's active range of motion. <u>Id.</u> Moreover, the record also reveals that it was at that visit that Mr. Alpaugh's Advanced Practice Registered Nurse (APRN) ordered x-rays of his ankle (R. 389), and those x-rays revealed "[f]ragmentation of the navicular, severe degenerative changes of the midfoot, plantar flexion of the talus, and marked irregularity of the anterior subtalar joint" (R. 378), as acknowledged by the ALJ. (R. 23). This fact suggests that Mr. Alpaugh's right foot was in worse shape than his treatment provider perceived on her physical examination. In any case, it highlights the fact that the ALJ did not discuss these findings in relation to the effects of the decedent's obesity.

Again, the court acknowledges that its general practice "is to take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173. However, SSR 02-1p specifically requires an explanation which is missing here, and Plaintiff has pointed to several ambiguities in the decision and the record evidence which beg an explanation. Remand is necessary to accomplish it.

Finally, the court notes that Plaintiff asks the court to remand "with directions to the Commissioner to grant his application for SSA disability benefits as he sustained his burden through step four of the sequential evaluation process and the Commissioner did not sustain her burden at step five." (Pl. Br. 16). Whether to remand the case for an immediate calculation and award of benefits is within the discretion of the district court. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)). In 2006, the Tenth Circuit noted two factors relevant to whether to remand for an immediate award of benefits: Length of time the matter has been pending and "whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'" Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006) (quoting Harris v. Sec'y of Health & Human Servs., 821 F.2d 541, 545 (10th Cir. 1987); and citing Sisco v. Dep't of Health & Human Servs., 10 F.3d 739, 746 (10th Cir. 1993)). The decision to direct an award should be made only when the administrative record has been fully developed and when substantial and

uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

The court acknowledges that there is evidence in the record from which it might be found that the decedent was disabled within the relevant period at issue here.  However, that evidence is not uncontroverted and it is the better course to allow the Commissioner to bring her expertise to bear on that issue in the first instance.  Moreover, Plaintiff does not cite or argue from any relevant legal authority of the Tenth Circuit on the issue of remand for an immediate award of benefits.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

Dated this 12th day of September 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**